## THE BOROUGH OF CHAMBERSBURG v. DAVID MANKO ET AL.

1. The right to maintain ejectment, against persons encroaching upon a public highway, usually belongs to the local municipal authorities having charge of the road; but this rule is not applicable to the case of a turnpike, in control of a private corporation, even though the municipality may have, over the turnpike, certain prescribed powers, which, if possessed over an ordinary highway, would create, by implication, a right to maintain that action.

2. The charter of the borough of Chambersburg gives the borough no right to maintain ejectment for an encroachment on the Trenton and Crosswicks turnpike.

In error to the Supreme Court.

For the plaintiff in error, *G. A. Anderson* and *B. Gummere.*

For the defendants, *E. T. Green* and *A. G. Richey.*

The opinion of the court was delivered by

DIXON, J.  In an action of ejectment, brought by the borough of Chambersburg against David Manko and others, the plaintiff's case was, that the defendants had encroached upon the turnpike of the Trenton and Crosswicks Turnpike

Company, and within the lines of what was formerly the White Horse road, which had been vacated, pursuant to the charter of the company, for the purpose of having the turnpike laid. The plaintiff claims the right to maintain ejectment for any portion of the old highway and present turnpike lying within the borough. At the trial a nonsuit was ordered, the court holding that the turnpike company, and not the borough, had the right contended for. This judgment is now assailed here.

The borough bases its claim upon either of two grounds—first, upon the express words of its charter; secondly, upon its implied right, as the local municipal authority, to represent the public in the assertion and defence of the public use of the highway.

The charter (*Pamph. Laws*, 1872, *p.* 1044, § 12,) authorizes the council of the borough to pass, alter and repeal ordinances, rules, by-laws and regulations, for the purposes of regulating, cleaning and keeping, or directing to be kept in repair, highways, turnpikes, &c., of prescribing the manner in which corporations or persons shall exercise any privilege granted to them in the use of any turnpike, highway, &c., or in digging up the same for any purpose whatever, and of regulating and directing the planting, &c., of shade trees therein, and of widening, leveling, paving, &c., highways, turnpikes, &c., and of preventing or regulating the construction of any erection upon or projection over any street, turnpike, &c., and of preventing and punishing immoderate driving in any street, turnpike, &c.; and Section 14 authorizes a penalty of imprisonment or fine for the violation of any ordinance. Section 24 authorizes the council to order and cause sewers or drains to be constructed in or across any highway or turnpike. These, so far as I find, are all the express powers given to the borough in respect to turnpikes. Those conferred under the twelfth section, are obviously limited in their language to the passage and enforcement of penal regulations, having in view the end contemplated. An action of ejectment is not necessary for their exercise.

Whether the power of constructing sewers, given by the twenty-fourth section, might, under special circumstances, justify an action of ejectment against one holding the land in opposition to its exercise, it is needless to decide, for the reason that here no such circumstances exist. I therefore think that the borough cannot stand upon the words of its charter.

As to the second ground for the maintenance of the suit, it is undoubtedly well settled as a general principle, that the local authorities having charge of highways and public grounds may maintain ejectment against any person encroaching upon them. Since the case of *Dummer* ads. *Den, ex dem. Selectmen of Jersey City, Spenc.* 86, it has frequently been acted upon in this state. *Trustees of M. E. Church* ads. *Mayor, &c., of Hoboken*, 4 *Vroom* 13.

In *Hoboken Land and Improvement Co.* v. *Mayor, &c., of Hoboken*, 7 *Vroom* 540, the principle was directly affirmed in this court; and in *Easton and Amboy R. R. Co.* v. *Inhabitants of Greenwich*, 10 *C. E. Green* 565, the right to a similar remedy in equity was adjudged to be equally clear. The action of ejectment is a possessory action, and the power of the municipality in each case, to maintain it, depends upon the fact that its duties in regard to the streets and public grounds are such as require a right of exclusive possession. In *Hoboken Land and Improvement Co.* v. *Mayor, &c., of Hoboken, supra,* the court says, " where the public easement is such that possession, exclusive of any interference by the owner of the fee, is essential for its improvement, regulation and enjoyment, the only appropriate action to obtain the possession is ejectment." And in *Dummer* ads. *Den, ex dem. Selectmen, supra,* the court says, " the rights of the public in common property are vested in the municipal authorities, and if such rights cannot be enforced in their name, they cannot be enforced at all." These two citations indicate the range of inquiry in the present case—first, whether the public easement in the *locus in quo* is such as to require a right of exclusive possession ; and, secondly, whether the plaintiff is

necessarily or designed by the legislature to be the entity through whom that possession is to be maintained.

The *locus in quo* was originally a common highway, but, as the case shows, it was vacated in 1854, by six surveyors, "for the purpose," as expressed in their return, "of carrying into effect the provisions of" the charter of the turnpike company. That this vacation was not intended to, and did not, in fact, impair the rights of the general public to travel the road, as those rights constituted an easement upon the land in the hands of the owner of the soil, was correctly decided in *Wright* v. *Carter*, 3 *Dutcher* 76. That this vacation and the laying out of the turnpike did impair the enjoyment of those rights, to the extent of burdening them with the payment of tolls to the company, is indisputable. But such impairment in no way affected the necessity of a right of exclusive possession for the proper use of the easement which remained. The rights of those individuals of the public, who paid the lawful tolls, were just as broad, after the turnpike was laid, as had been the rights of all individuals before the highway was vacated, and needed for their protection as exclusive possession in their representative. The first inquiry must, therefore, be answered affirmatively.

The response to the second inquiry will be found by ascertaining on whom has been cast the general duty of preserving the road in fit condition for public enjoyment. Ordinarily, as we have seen in *Dummer* ads. *Den, ex dem. Selectmen, supra,* it is devolved upon the local authorities, but this is entirely subject to legislative control. In the present case, the charter of the turnpike company (*Pamph. Laws,* 1854, *p.* 488,) clearly imposes on the company the duty of constructing and keeping in repair the turnpike according to the description in the seventh section. And in *Wright* v. *Carter, supra,* it is well stated by the Chief Justice, that in providing for the vacation of the highway, the legislature had in view the prevention of any doubt as to the discharge of the township from all obligation to repair the road, or liability for want of repair; its purpose was simply to trans-

fer the duty of maintaining and repairing the road from the public to the corporation. It follows, then, by an irrefutable course of reasoning, that the right of possession which had existed in the township only because it was charged with this duty, and which was a mere adjunct of the duty, passed with the obligation from the township to the company. Since that time, nothing has been done by which the company has been freed from its obligation. The charter of the borough does not lessen it. That law may have given the local government certain powers, to be exercised in the prescribed mode for the consideration of the public rights; but the general duty to which the possessory remedy belongs, remains where it was—in the company. The powers vested in the municipality might, in the case of a common highway, where none other than the public body was charged with the obligation, impliedly create the duty of preservation, sufficiently broad to justify the use of this possessory action; but such an implication will not arise when a private corporation exists, on whom the burden has been expressly imposed. A clearer expression of legislative intent is necessary, either to deprive such a corporation of the benefits of its charter, or to relieve it of its burdens. *Quinn* v. *City of Paterson*, 3 *Dutcher* 35.

If a doubt could arise on the charter, the act of 1874 (*Pamph. Laws, p.* 406,) makes it evident that no such interference with the company's privileges or duties was contemplated.

The nonsuit was, in my judgment, correct, and should be affirmed, with costs.

*For affirmance*—DALRIMPLE, DEPUE, DIXON, KNAPP, SCUDDER, VAN SYCKEL, CLEMENT, GREEN, LILLY.   9.

*For reversal*—WOODHULL.   1.